```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

FILED
02 OCT 10 AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

CARL WRIGHT                    )
                               )
    Plaintiff,                 )    Civil Action No.
                               )
v.                             )    01-AR-2213-S
                               )
BELLSOUTH TELECOMMUNICATIONS, INC. )
                               )
    Defendant.                 )
                               )

ENTERED
OCT 1 0 2002

## MEMORANDUM OPINION

Plaintiff, Carl Wright ("Wright"), sues defendant, BellSouth Telecommunications, Inc. ("BellSouth"), for improper denial of benefits under ERISA and for retaliatory discharge in violation of ERISA § 510 (29 U.S.C. § 1140). BellSouth has moved for summary judgment on both claims. The following motions are also before the court: 1) Wright's motion for partial summary judgment to make the preliminary injunction permanent, and 2) BellSouth's motion to dissolve the injunction. For the reasons that follow, BellSouth's motion for summary judgment will be denied, Wright's motion to make the preliminary injunction permanent will be granted, and BellSouth's motion to dissolve the injunction will be denied.

### Statement of the Facts

Wright has been an employee of BellSouth for about 23 years. As an employee, Wright is a participant in and a beneficiary of



the Short Term Disability Plan ("STD plan") and the Long Term Disability Plan ("LTD plan"). Under the terms of the STD plan, Wright is entitled to receive disability benefits if he is "unable to perform any type of work as a result of a physical or mental illness or an accidental injury." Any type of work includes "the participant's regular job with or without reasonable accommodation, any other participating company job (regardless of availability) with or without accommodations, or temporary modified duties."

The STD benefits are paid from the operating expenses of BellSouth, and payment of benefits are not contingent upon sufficient funds being in a trust account. BellSouth's payroll department sends a check each pay period to the beneficiary. Under the STD plan, as amended in 1996, Kemper National Services ("Kemper") became the "named fiduciary under the plan with complete authority to review all denied claims for benefits in exercising such fiduciary responsibilities." Kemper is required to "adjudicate all plan claims and appeals in accordance with written claim review procedures provided by BST." The requirements for the objective evidence of loss of function test used by Kemper in determining disabilities is part of the documents prepared by BellSouth.

On April 3, 2001, Wright stopped reporting to work. On April 10, 2001, Wright's supervisor notified Kemper of Wright's absence

in accordance with the STD plan. For about a week, Kemper unsuccessfully tried to contact Wright's physicians to get medical information. On April 23, 2001 Kemper denied Wright's STD claim based on lack of any medical evidence to support the existence of a disability. On April 27, 2001, Kemper received a note from Dr. Cain stating that Wright was under his care and was not able to work. The note contained no further information and no diagnostic information.

On May 7, 2001, Wright filed a first level appeal of the denial of STD benefits. In support of this appeal, Wright submitted an examination from Dr. Remick, a psychologist who found that Wright suffered from "depression," and a bill confirming that Wright had visited Dr. Cain on one occasion. On May 19, 2001, Wright entered the hospital where surgery was performed to remove a small bowel obstruction. He was released on May 26, 2001. No information concerning this surgery or hospital visit was at that time submitted to Kemper.

On June 20, 2001, Wright was notified he was expected to return to work or that he would be discharged for absenteeism. Wright elected not to report, and BellSouth terminated his employment on June 26, 2001. On June 26, 2001, Kemper denied Wright's first level appeal on the basis that the information submitted did not establish that he was unable to perform all types of work. Wright had 60 days in which to appeal. On August

9, 2001, Wright filed a claim for unemployment compensation benefits and signed a document stating that he was able to work. Wright was sent one check, but because he could not work his checks were stopped.

On August 31, 2001, Wright filed his complaint in this court and requested a preliminary injunction preventing BellSouth from terminating his employment during the appeals process of his STD benefits claim.  On September 3, 2001, Kemper received Wright's second-level appeal. In connection with that appeal, Wright submitted to Kemper information regarding his May 2001 hospitalization. On September 10, 2001, this court conducted a hearing on Wright's request for a preliminary injunction. On September 13, 2001, this court issued a preliminary injunction, reinstating Wright and thereby providing him with healthcare coverage and accruing pension benefits pending the processing of his administrative appeal. This injunction did not become effective until October 4, 2001. Consequently, Wright went at least 70 days without health insurance.

The court found that Wright "has had a lower bowel resection as a result of colon cancer. Suffering severe abdominal pain, he recently underwent an emergency operation for an intestinal obstruction. He has sarcoidosis. He has hypertension. He suffers from depression. He is on several medications, including prednisone. He has a pending claim for Social Security disability

benefits . . .His primary treating physician has described him as totally disabled and unable to work."

On October 26, 2001, Kemper had two medical professionals, Dr. Weinstein and Dr. Burnstein review the information Wright had submitted in connection with his second level appeal. On November 1, 2001, a three-person appeals committee, consisting of two independent physicians and a case manager, reviewed the information submitted by Wright and the reports of Dr. Weinstein and Dr. Burstein. Kemper's appeals committee decided to deny STD benefits effective April 10 through April 18, 2001, to reinstate STD benefits from May 18 to June 5, 2001, and to deny STD benefits from June 5, 2001 forward. Under the terms of the STD plan, this decision is final and is not subject to further review.

On January 2, 2002, the Social Security Administration determined that Wright was disabled. It found 1)that Wright has been disabled since October 28, 1999 and that he suffers from sarcoidosis, depression, and lumbar degenerative changes with mild foraminal narrowing and foraminal encroachment, among other things; and 2) that he has physical limitations that include moderately severe to severe chronic disabling pain and fatigue to the extent that he cannot perform even sedentary work and mental illness causing severe limitations on his ability to maintain concentration and attention, interact with supervisors and

coworkers, and cope with ordinary work pressures.

On April 8, 2002, Wright moved this court to "remand the matter to Kemper" to compel it to reconsider its November 1, 2001 decision in light of additional medical evidence submitted in December 2001 and January 2002. On May 13, 2002, this court granted Wright's motion to "remand" to Kemper. On June 28, 2002, Kemper notified Wright that it had reviewed his benefits claim, taking into account all of the medical and other documentation that had been submitted to that date. Kemper noted that although Wright had been approved for Social Security Disability Benefits, "[t]he SSA uses different criteria for eligibility than are considered under [Wright's] plan." Wright's newly submitted medical information, as well as all medical information he previously had submitted, was reviewed by a peer physician and re-examined by Kemper's Appeals Review Committee. Based on all of this information, Kemper concluded that, with the exception of the period from May 14 to June 5, 2001, Wright "was not disabled from 'any type of work . . . with or without appropriate medical restrictions, as required under the definition of disability under the plan." Kemper noted that the newly submitted information was indicative of time periods not entirely relevant to the STD claim at issue.

### Analysis

BellSouth says that it is entitled to summary judgment

because it is not a proper defendant. Of course, if BellSouth is correct, it was not a proper party when this suit was filed and when the preliminary injunction (from which no appeal was taken) was issued.

The Eleventh Circuit has held that in an ERISA action seeking benefits wrongfully denied under a welfare benefit plan, the proper defendant is the administrator of the plan or other "party capable of providing the relief requested." *Hunt v. Hawthorne Assocs.,Inc*. 119 F.3d 888, 908 (11th Cir. 1997), *reh'g en banc denied*, 131 F.3d 157 (11th Cir. 1997), *cert. denied,* 523 U.S. 1120 (1998). The key as to whether a party is a proper defendant is "whether [it] had sufficient decisional control over the claim process that it would qualify as a plan administrator." *Hamilton v. Allen Bradley,* 244 F.3d 819, 824 (11th Cir. 2001). BellSouth argues that in this case Kemper controlled the entire claims process and that BellSouth's involvement was limited to reporting the initial claim on Wright's benefit. BellSouth contends that the mere fact that it is listed as "Plan Administrator" does not dispositively resolve its status as a proper defendant.

Wright responds by pointing out that Kemper is simply BellSouth's agent. BellSouth argues that Wright does not identify a single case providing that the concepts of Alabama agency law are applicable to an analysis of ERISA benefits claims. BellSouth

7

points out that "ERISA preempts state law and authorizes federal courts to create federal common law to implement Congress' statutory scheme." *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1580 (11th Cir. 1992), so that Wright's discussion of Alabama agency law is immaterial. However, in *Nationwide Mut. Ins. Co. v. Darden*, 112 S.Ct. 1344, 1348..., the Supreme Court said "[i]n the past, when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." The Court went on to apply the common-law agency doctrine to ERISA's definition of employee. The Court adopted, for ERISA purposes, the common-law test articulated in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166 (1989). In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished . . ." *Darden*, 112 S.Ct. at 1348 (quoting *Reid*, 490 U.S. at 751-52, 109 S.Ct. at 2178-79). Although Alabama agency law may not be binding, the common-law agency principles used in *Darden* can be and should be applied in this case.

According to Wright, BellSouth has the right to tell Kemper how to review claims, and Kemper must strictly comply with BellSouth's instructions. BellSouth did prepare the plan documents and it provided them to Kemper, instructing Kemper as

8

to how to review claims for benefits. BellSouth also instructed Kemper to use the same "objective" evidence of functional impairment criteria that BellSouth used from 1990 through 1996. Wright argues that BellSouth has exercised these retained rights in administering other claims, as well as the claim at issue here.

Wright next argues that even if Kemper is not an agent of BellSouth, BellSouth is still the proper party defendant because the "proper party" is the party that controls administration of the plan or the party capable of providing the relief requested. *Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). Wright argues that BellSouth controls the method and manner by which Kemper administers the plan, provides Kemper with its rules, procedures, and guidelines, and has the right to issue specific instructions to Kemper on any subject. Furthermore, according to Wright, BellSouth is the only party that can provide the relief requested which is the actual payment of plan benefits. Kemper is not an insurer. If Kemper were the defendant it would look to BellSouth to provide indemnity. Wright points to the Kemper/BellSouth contract, which provides, *inter alia*:

> Where specific instructions as to a particular matter have been given, Kemper is charged with **strict compliance** with such instructions...
>
> Kemper **shall** adjudicate all plan claims and appeals in accordance with written claim review **procedures provided by BST**.

9

Wright has not only raised a genuine dispute of material fact as to whether Kemper is the agent of BellSouth thus a proper defendant in the case, but would probably be entitled to partial summary judgment on this issue on the undisputed facts if he had filed a motion for a judgment to the effect that Kemper is the agent of BellSouth for the purposes of this case.

If Kemper is not the agent of BellSouth, BellSouth is nevertheless the plan administrator. The role of BellSouth determines which standard of review is appropriate. Wright contends that the modified arbitrary and capricious standard of review applies. BellSouth, on the other hand, argues that the appropriate standard of review is arbitrary and capricious. *See Muskett v. BellSouth Telecommunications, Inc.*, CV-99-C-2796-S (N.D. Ala. Mar. 27, 2002). Assuming *arguendo* that BellSouth is the plan administrator and proper defendant for that reason, Wright has raised a genuine issue of material fact as to whether there is a conflict of interest and the modified arbitrary and capricious standard of review applies because that standard applies when the fiduciary making the decisions has a conflict of interest. *Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 243 F.3d 541 (11th Cir. 2000). In administering its employee disability benefit plans, BellSouth has previously been determined to have a conflict of interest which necessitates the modified standard. *Godfrey v. BellSouth Telecommunications, Inc.*,

89 F.3d 755, 758 (11th Cir. 1996). In *Godfrey*, BellSouth self administered the plan and paid benefits from its operating expenses.

Wright argues persuasively that Kemper is not a true third party administrator because BellSouth controls the method and manner by which Kemper processes claims just as BellSouth did when its own employees decided claims. Kemper's employees use the procedures and interpretations mandated by BellSouth just as BellSouth's own employees did. "If a company is acting as a plan administrator, then it should be held liable for such conduct regardless of a sham designation in the plan document." *Rosen v. TRW, Inc.*, 979 F.2d 191 (11th Cir. 1992). Furthermore, in order to avoid a conflict of interest the plan must be structured with a real trust from which the beneficiaries are paid and not paid at all if the trusts does not have assets. *Vann v. National Rural Elect. Coop. Assoc. Retirement and Security Program*, 978 F. Supp 1025 (M.D. Ala. 1997).

BellSouth argues unpersuasively that there is no evidence that BellSouth acted arbitrarily and capriciously. BellSouth contends that this court is limited to deciding whether Kemper's interpretation of the plan was reached rationally and in good faith, not if its interpretations and ultimate decision was correct. *Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997). BellSouth argues that nothing new offered by Wright supports his

11

contention of disability. BellSouth alternatively contends that Wright is only arguing that Kemper's refusal to grant him an extension to submit supporting documentation following the deadline for his second-level appeal, and Kemper's subsequent refusal to consider the documentation once supplied, is arbitrary and capricious. Although this is one of many arguments made by Wright, Wright is also arguing that BellSouth's decision would not survive under either standard of review. Wright contends that BellSouth "cherry picked" the items that showed normal results without considering the items that showed abnormal results. Wright says that BellSouth acted irrationally and unreasonably when it ignored the vast body of data and medical opinions, without articulating a good reason to question those findings and conclusions.

Wright argues that the test used by Kemper (and BellSouth) to determine disability should be rejected. BellSouth's interpretation of the plan is that BellSouth makes the determination of disability based only upon "objective" evidence of functional impairment. In *Godfrey v. BellSouth*, 89 F.3d 755, 758 (11th Cir. 1996), BellSouth limited the definition of disability, to loss of function and argued that pain alone does not substantiate disability. The court found that nothing in the plan required BellSouth's narrow interpretation of the language. *Id.* at 758. The same test is used today. The only reason given

for the denial of benefits was that the medical information did not show objective evidence of a loss of function. BellSouth is attempting to reach the same result that it argued unsuccessfully for in *Godfrey* and earlier in this case by merely having Kemper do the evaluations instead of BellSouth. Wright submits that the plan requires the use of all evidence available, whether it is subjective, objective, or opinion, to determine whether or not the employee can perform his regular job with or without accommodations and any other company job with or without accommodations. *See* Brewer v. *BellSouth,* CV. No. 00-AR-2478-S, (Jan. 29, 2002).

This court entered its injunction on September 13, 2001, finding that Wright suffered from many different ailments and that there was a sufficient likelihood of ultimate success to justify the preservation of the *status quo* while Wright exhausted his review procedures on the disability administrative track. Wright contends that the injunction order accurately states the relevant facts and that Wright was subsequently found to be disabled since 1997 by the Social Security Administration.

This court also found that "the determinative or ultimate issue in this case is that BellSouth, to some degree, was motivated in its decision to terminate Wright by its policy or desire to minimize its exposure to its costs for providing medical benefits and pension benefits. BellSouth may have had

13

other, unproscribed motives for terminating Wright, but this particular motive is proscribed by 29 U.S.C. § 1140. BellSouth's careful proof of the cost to it of providing medical coverage and pension contributions for 'employees' constitutes proof enough of a connection between Wright's termination and BellSouth's desire to avoid the cost of ERISA protected benefits."

BellSouth argues that Wright has offered no evidence that BellSouth's discharge decision was motivated by his claim for ERISA benefits. It claims that Wright is judicially estopped by having contended that he was discharged in retaliation for a nine year-old lawsuit against BellSouth. BellSouth further contends that Wright was terminated pursuant to BellSouth's attendance policy, a legitimate non-retaliatory reason.

The evidence developed at the preliminary injunction hearing and the findings by the court therein are sufficient to push this case beyond the summary judgment stage. In addition to that evidence, Wright contends that BellSouth terminated Wright so that he would suffer a disruption in his ability to provide Kemper with evidence of his disability. Wright asks BellSouth why, if it did not intend to force him to return to work and forego benefits, it did not place him on medical leave pending review of the disability claim. BellSouth could reasonably anticipate that a person without health insurance and without income could not obtain the type of "objective" medical evidence

14

and hospital treatment that is purportedly required by Kemper (and BellSouth).

Wright requests that the injunction remain effective until the court determines the amount of his disability benefits by final order. If he is entitled to long term benefits there will be no need for an injunction. BellSouth argues that because the basis for issuing an injunction against BellSouth no longer exists, the injunction should be dissolved. This court's September 13, 2001 order enjoined BellSouth from terminating Wright "while he exhausts his procedural obligation under his claim for disability benefits..." noting that "[t]here is sufficient likelihood of success to justify the preservation of the *status quo* while Wright exhausts his review procedures on the disability administrative track." BellSouth contends that since Wright has now exhausted his administrative avenues for review of his claim for disability benefits, the purpose of the injunction has been satisfied. This court disagrees. In the injunction this court stated that:

> Termination had the effect, or will have the effect unless there is judicial intervention, (1) of eliminating Wright's basic income, whether disability income or wages, (2) of eliminating Wright's medical insurance coverage, and (3) of eliminating the accrual of pension benefits, a right that is now vested but will not become payable until Wright reaches the age 65, if he reaches that age, a highly conjectural matter considering the state of his health.

A separate order will be entered consistent with the

foregoing findings.

DONE this ___10th___ day of October, 2002

                                                    _____
                                                    WILLIAM M. ACKER, JR.
                                                    UNITED STATES DISTRICT JUDGE